# Richmond.

## T. E. ROBERTS v. C. D. NEVEL.

### December 22, 1927.

1. PARTNERSHIP—*Liability of Partners—One Member of Partnership Operating Individually—Case at Bar.*—In the instant case defendant formed a partnership with one S. "to purchase and resell the following described tracts or parcels of land and the standing timber thereon."

   *Held:* That the partnership contract did not contemplate the business of sawing timber trees into boards or other lumber.

2. PARTNERSHIP—*Liability of Partners—One Member of Partnership Operating Individually—Evidence—Case at Bar.*—In the instant case defendant formed a partnership with one S. "to purchase and resell the following described tracts or parcels of land and the standing timber thereon." On the same day S. entered into a contract with the partnership "to manufacture into lumber the standing timber on the following described tracts or parcels of land," etc. The present action was brought by the assignee of laborers for wages while manufacturing timber for S.

   *Held:* That the court erred in refusing to allow certain testimony to go to the jury tending to show knowledge on the part of the employees of S., of the fact that the saw mill operations were conducted by S. independently, and that they gave credit to him, and to him looked for their hire.

3. WORDS AND PHRASES—*Lumber.*—Lumber is timber sawed into merchantable form, especially boards.

4. PARTNERSHIP—*Liability of Partners—One Member of Partnership Operating Individually—Evidence—Case at Bar.*—In the instant case defendant entered into a contract of partnership with one S. to buy and sell land and standing timber. On the same day S. entered into a contract with the partnership to manufacture timber. The assignee of laborers of S. engaged in the manufacture of timber sought to hold defendant liable as S.'s partner for their wages. S. testified that the claims of plaintiff's assignors were due either by his son or himself and not by the partnership, and that the laborers knew they were employed by him individually and by his son and not by the partnership. The son of S. corroborated his testimony. This testimony was excluded from the jury by the court.

   *Held:* Error.

5. Partnership—*Liability of Partners—Presumption.*—Where a person is known to be acting as partner for a known partnership, the presumption is that he intended to bind the partnership and not himself only, and where such was the intention the partners and not the single partner will be bound.

6. Partnership—*Liability of Partners—Presumption—Rebuttal of Presumption.*—The presumption that a partner intended to bind the partnership and not himself only may be rebutted, and if it appears that the other party has knowingly dealt with the partner as an individual, and that the latter has pledged his individual credit, the partner alone will be bound and not the firm. And if the transaction were really an individual one, the firm does not become liable because it afterwards received the benefit of the transaction.

7. Partnership — *Liability of Partners — Questions of Law and Fact.*— Whether credit was extended to the partnership as such, or to a partner individually, is a question to be determined in view of all the facts and circumstances of the case.

8. Appeal and Error—*Final Judgment by Appellate Court—Case at Bar.*— In the instant case defendant's liability was dependent upon whether or not the partnership which he had formed with one S. was liable for plaintiff's claims. Defendant's theory was that the claims in question arose out of the individual transactions of S. and that credit was extended to S. alone. Notwithstanding the fact that the court excluded evidence in support of plaintiff's theory and practically instructed the jury to find for plaintiff, the jury found a verdict for defendant which the court set aside.

*Held:* That the theory of defendant should have been submitted to the jury by proper instructions, but as the jury found for defendant the appellate court would set aside the judgment of the trial court and reinstate the verdict in favor of defendant.

Error to a judgment of the Circuit Court of Mecklenburg county, in an action of assumpsit. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*Chas. J. Faulkner* and *Irby Turnbull,* for the plaintiff in error.

*George E. Allen,* for the defendant in error.

McLEMORE, J., delivered the opinion of the court.

Action at law in the Circuit Court of Mecklenburg county in which C. D. Nevel was plaintiff and T. E. Roberts defendant. Jury rendered verdict for the defendant which the court set aside and entered judgment for plaintiff. Defendant brings error.

On February 5, 1923, R. E. Saunders and T. E. Roberts entered into a partnership agreement "for the special purpose hereinafter stated and no other."

"The firm name is to be that of Saunders and Roberts.

"The object of this partnership is to purchase and resell the following described tracts or parcels of land, and the standing timber thereon, to-wit," then follows a description of two tracts of land containing in the aggregate 1,090 acres with general stipulations as to the method of disposing of the property, division of the profits, etc.

On the same day—February 5, 1923, Saunders & Roberts entered into a contract with R. E. Saunders, the material paragraphs of which follow:

"This contract made and entered into this the 5th day of February, 1923, by and between R. E. Saunders, party of the first part, and Saunders and Roberts, parties of the second part:

"Witnesseth, that for and in consideration hereinafter named, the said party of the first part hereby promises and agrees to manufacture into lumber the standing timber on the following described tracts or parcels of land, to-wit:

"Those certain tracts or parcels of land, one containing ninety acres, more or less, and the other containing 1,000 acres, more or less, lying in Plymouth magisterial district, Lunenburg county, Virginia, known as the J. B. Redfield tracts;

"And to manufacture the said timber into lumber of such sizes and dimensions as will be calculated to bring the best price on the market; to rack and stack the lumber on the sawmill yards when necessary; to preserve and protect the same in such a way as to bring the highest market price; to haul the said manufactured lumber to the railroad station at Nutbush or Victoria whichever place may be most convenient, and to load the said lumber on cars.

"The said Saunders and Roberts, for and in consideration above named, hereby promise and agree to pay to R. E. Saunders the sum of $12.00 per thousand, board measurement, payments to be made as follows: $7.00 per thousand every two weeks after beginning to manufacture the same, as per estimated amount of lumber on mill yards; $3.00 per thousand additional, every two weeks for all lumber loaded on cars; a complete settlement to be made every sixty days as per sale bills.

"The parties of the second part further promise and agree that in the event there is a charge made for land at or near the siding where the lumber is boarded on cars, such expense shall be borne by them."

Under the partnership contract Saunders was the active man, and looked after the farming operations for the firm of Saunders and Roberts, beginning in the first part of 1924, and in keeping with one of the provisions of the contract, A. B. Crowder, Jr., was employed as bookkeeper for the partnership, and for R. E. Saunders as well.

Under contract No. 2, Saunders began in the early part of 1924 to manufacture the standing trees into lumber, and in March, 1924, under a sub-contract he turned over the mill operations to his son, P. G. Saunders, who conducted the same until June 27th

of that year, employing, paying and discharging the laborers at his will. The men employed in connection with the manufacturing of lumber were all paid either by checks of R. E. Saunders or P. G. Saunders, and the account with relation to the farm operations were kept separate and distinct from those having to do with the logging and saw-milling.

R. E. Saunders continued in charge of the various operations on the farm and otherwise until July 18, 1924, at which time he left the State, and left the laborers unpaid for services rendered from June 27th to the time of his departure, an amount aggregating more than $1,300.00. T. E. Roberts who was in bad health took no part in the affairs of the partnership, in fact was out of the county most of the time until August 1, 1924, when he returned to learn that the partnership was insolvent, its affairs in a chaotic condition, and R. E. Saunders gone to some distant State.

In August, 1924, numerous of the workers employed by Saunders about the mill operations filed a petition in bankruptcy against R. E. Saunders in which they set up and asserted their claims duly sworn to against the said Saunders individually, their petition being answered by certain creditors of the bankrupt. This seems to have been the extent of the bankrupt proceeding.

On February 21, 1925, these several unpaid laborers assigned their claims to C. D. Nevel, and he, as assignee, brought this action of assumpsit against T. E. Roberts and R. E. Saunders, late partners trading as Roberts and Saunders. Upon the trial on the merits the jury found for the defendant, whereupon the court set aside the verdict and entered judgment for the plaintiff. The propriety of the court's action is before us for review, in so far as it affects T. E. Roberts, the plaintiff in error.

There are nine assignments of error in the petition of the plaintiff, but we deem it necessary to refer only to the first, which is: "The court erred in setting aside the verdict of the jury and entering judgment for the plaintiff for the amount sued for, less the amount which the petitioner had paid into court."

The theory of the case contended for by the defendant in error and accepted by the trial court is best demonstrated by certain instructions given at the instance of the plaintiff in the court below:

"(a) The said contract made and entered into on the 5th day of February, 1925, between R. E. Saunders, party of the first part, and T. E. Roberts, party of the second part, is a contract, the effect of which is to make R. E. Saunders and T. E. Roberts general partners for the purpose of buying and selling the said lands and timber mentioned therein, and cutting, removing and manufacturing said timber thereon into lumber, in disposing of the same, and makes each party thereto liable to third persons for the indebtedness incurred by either Roberts or Saunders, or both, while in and about the business of cutting and removing said timber, manufacturing the same into lumber, taking care of the same, and placing it on board railroad cars."

\*      \*      \*      \*      \*      \*      \*      \*      \*

"(c) That if the jury believe from the evidence that said contracts were executed by Saunders and Roberts, and that the said R. E. Saunders, acting in pursuance of said two contracts, employed the plaintiff and the plaintiff's assignors, in and about the cutting, removing and manufacturing into lumber the said standing timber on said land in said contracts described, and loading the same on board railroad cars, in order that the same might be disposed of to the credit of the firm, and that

the claims which constitute the subject matter of this action are comprised of wages earned by the plaintiff and his assignors for such services, then the jury will find for the plaintiff and assess his damages at the aggregate amount of such indebtedness as shown by the evidence."

The position taken by Roberts is set forth in instructions A and B asked for in his behalf and refused by the court:

"Instruction A.   The court instructs the jury that if they shall believe from the evidence that the plaintiff and his assignors, at the time the work was done on which this action is based, had knowledge of the fact that R. E. Saunders was operating as an individual the saw mills and other utensils and teams for the manufacture and loading of the timber, then neither the firm of Saunders and Roberts nor T. E. Roberts is liable for the payment of the debts asserted in this action.   And in this connection the court tells the jury that knowledge as used in this instruction means not only actual knowledge, but also knowledge of such other facts as in the circumstances shows bad faith.

"Instruction B.   The court instructs the jury that if they believe from the evidence that the plaintiff and his assignors, in doing the work sued for in this case, extended credit to R. E. Saunders alone, then neither the firm of Saunders and Roberts nor T. E. Roberts are liable, and the jury must so find."

The court refused all instructions asked for by counsel for Roberts, and the case went to the jury with instructions which in effect told them to find for the plaintiff.

The jury, notwithstanding the instructions, returned

a verdict in favor of the defendant Roberts, which the court set aside, and entered judgment for the plaintiff. This action on the part of the learned trial judge was entirely consistent with the construction placed upon the two contracts of February 5, 1923, and embodied in the instructions given to the jury at the trial of the case.

[1–3] We think the court erred in its construction of the contracts and in refusing to allow certain testimony to go to the jury tending to show knowledge on the part of the employees of R. E. Saunders, of the fact that the saw mill operations were conducted by Saunders independently, and that they gave credit to him, and to him looked for their hire.

Aside from the construction placed by the court on the contracts, which in the light of the jury's verdict becomes harmless error, if a verdict could be sustained based on the evidence presented in the record, we come now to consider these facts:

The partnership contract was formed "to purchase and resell the following described tracts or parcels of land and the *standing timber thereon*." (Italics supplied.)

The contract between R. E. Saunders, party of the first part, and Saunders and Roberts, parties of the second part, obligates R. E. Saunders "to manufacture into lumber the standing timber on the following described tracts or parcels of land, etc."

The language used in describing the purposes for which these contracts were entered into is not the loose inaccurate verbiage of the layman, but on the contrary, is so clear and definite as to leave no room for doubt that the words were advisedly used.

The partnership was formed to buy and sell land and

*standing timber,* a business.almost foreign to the hazardous business of running a saw mill. The contract with R. E. Saunders was to *manufacture standing timber into lumber.*

Lumber according to Standard Dictionary is: "Timber sawed into merchantable form, especially boards."

We think, therefore, that the partnership contract did not contemplate the business of sawing timber trees into boards or other lumber, and this view is reinforced by the construction placed upon it by the parties signing same, as evidenced by the contract between Saunders and Roberts and R. E. Saunders for the manufacture of the standing timber into lumber. There was nothing in the partnership contract that would justify the laborers working for R. E. Saunders in the milling business, in attempting to hold T. E. Roberts responsible for their wages.

[4] Without resting our conclusions, however, upon the construction of the contracts, let us advert to some of the evidence introduced for the defendant in the trial court.

R. E. Saunders in his testimony says:

"13th Question: Was the firm of Saunders and Roberts in any way liable for the claims of the parties listed whom you say either worked for you, R. E. Saunders, individually, or for your son, Perry G. Saunders?

"Answer: The claims of the parties listed, whom I have pointed out as having worked for either me or my son, Perry G. Saunders, are due by either my son or myself, respectively, and not by the partnership of Saunders and Roberts.

"14th Question: Please state whether or not the parties as listed as working for you, R. E. Saunders, individually, and your son Perry G. Saunders, indi-

vidually, knew that they were employed by you, R. E.
Saunders, individually, and your son, Perry G. Saun-
ders, individually, and not by the partnership of Saun-
ders and Roberts?

"Answer: Yes. Most of these parties work for me
four or five years before I went into the partnership of
Saunders and Roberts. The price of lumber went
down and I could not continue to operate and continue
to pay the same wages I had been paying in the year
1923. I called my men together and explained to them
that the contract price I was receiving from Saunders
and Roberts would not permit me to continue to pay
them wages that they were then receiving, and I then
and there put them on actual notice that I was op-
erating individually as a contractor with the partner-
ship of Saunders and Roberts, and under the terms
of the contract between me, R. E. Saunders, and Saun-
ders and Roberts, which contract has been heretofore
identified, those who were not present at this meeting
were personally employed and paid for their services
by me individually."

Perry G. Saunders also testified to substantially the
same facts, and the evidence of several witnesses
tending to show that the men were looking to R. E.
Saunders alone for their wages, was offered by the
defendant in corroboration of Saunders' testimony and
excluded from the jury by the court. This we think
was error, for if the testimony of R. E. Saunders is
true, and of this the jury were the judges, they were
well within their rights in returning a verdict in favor
of the defendant. *A fortorari*, should any evidence
offered in corroboration of R. E. Saunders' testimony
have gone to the jury?

In Mechem's Elements of Partnership (2nd ed. 1920),
section 289, we find the law stated:

[5–7] "Where a person is known to be acting as partner for a known partnership, the presumption is that he intended to bind the partnership and not himself only, and where such was the intention the partners and not the single partner will be bound. This presumption, however, may be rebutted, and if it appears that the other party has knowingly dealt with the partner as an individual, and that the latter has pledged his individual credit, the partner alone will be bound and not the firm. And if the transaction were really an individual one, the firm does not become liable because it afterwards received the benefit of the transaction. Thus, if money were loaned or goods sold to one partner as an individual, the firm does not become liable to the lender or seller simply because the money or the goods came to the use of the firm. The liability of the firm is to the partner upon whose credit the money or goods were obtained, and that partner must answer to those from whom they were obtained. Whether the credit was extended to the partnership as such, or to the partner individually, is a question to be determined in view of all the facts and circumstances of the case."

"The presumption of *prima facie* liability for a transaction entered into by a partner acting apparently within the scope of his authority may be rebutted by evidence that credit was given to the individual partner alone, or by proof that it was known that such partner acted fraudulently, or without the authority and consent of his copartners." 20 R. C. L. page 892; 30 Cyc. 490–1.

[8] We think the theory of the defendant in the court below should have been submitted to the jury by proper instructions, but as the jury has decided without instructions the issue presented by the pleadings,

and has reached a conclusion which might fairly have been recorded had proper instructions been given, we are of opinion to set aside the judgment of the trial court, re-instate the verdict of the jury in favor of the plaintiff in error, and enter judgment thereon in this court.

*Reversed.*